**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

BRANDON JAMAR LOFLAND,

     Petitioner,                  Civil No. 2:18-CV-13006
                                   HONORABLE VICTORIA A. ROBERTS
v.                              UNITED STATES DISTRICT JUDGE

CONNIE HORTON,

     Respondent,

_____/

## OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS, DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND GRANTING PETITIONER LEAVE TO APPEAL *IN FORMA PAUPERIS*

     Brandon Jamar Lofland, ("Petitioner"), confined at the Chippewa Correctional Facility in Kincheloe, Michigan, filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his conviction for first-degree felony murder, M.C.L.A. 750.316(1)(b), two counts of carjacking, M.C.L.A. 75.529a, felon in possession of a firearm, M.C.L.A. 750.224f, and possession of a firearm in the commission of a felony. M.C.L.A. 750.227b.

     For the reasons that follow, the petition for writ of habeas corpus is DENIED.

### I. Background

     A jury convicted Petitioner in Wayne County Circuit Court. This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith*, 581 F. 3d 410, 413 (6th Cir. 2009):

1

Defendant's convictions arise from a crime spree in Detroit on the night of September 13, 2014, during which he first carjacked Kevin Foy and took the vehicle Foy was sitting in, a 2014 red Dodge Charger, and then later attempted to carjack Quinton Brown, who was driving a Cadillac Escalade. Brown was shot during the offense and later died from his injury. The prosecutor's theory at trial was that between 9:00 and 9:45 p.m., Foy was sitting in the passenger seat of the running Charger when defendant ordered him out of the vehicle at gunpoint, and then drove away in the car. The Charger, which had a pushbutton starter, could be driven without the key fob if it was already running, but it could not be restarted once it was stopped. The prosecution presented video evidence from a gas station showing the stolen Charger pull up to a gas pump after 10:00 p.m., and the driver ultimately abandoning the vehicle when he could not restart it after purchasing gas. Defendant's former girlfriend, Nivra Bracey, identified defendant as the driver in still photographs obtained from the video. The video showed defendant walking away from the gas station in the direction of where Brown was later found. The prosecution theorized that defendant walked from the gas station in search of another vehicle, encountered Brown sitting in his Cadillac, and then shot Brown, planning to take his vehicle. Brown, who was armed, managed to shoot defendant. At approximately 11:00 p.m., defendant called Bracey, informed her that he had been shot in the neck, and asked her to call 911; defendant informed Bracey of his location, but then later gave her a different location. Ultimately, at 11:18 p.m., police officers responded to a gas station half a mile away from where Brown had been shot, and found defendant with gunshot wounds to his throat and cheek. The defense theory at trial was misidentification.

*People v. Lofland*, No. 329186, 2017 WL 252242, at * 1 (Mich. Ct. App. Jan. 19, 2017).

Petitioner's conviction was affirmed. *Id., lv. den.* 500 Mich. 1061, 898 N.W.2d 591 (2017).

Petitioner seeks a writ of habeas corpus on the following grounds: (1) The evidence was insufficient to establish Petitioner's identity, (2) the trial court erred in allowing a witness to identify Petitioner from photographs taken from a security videotape, and (3) trial counsel was ineffective for failing to present evidence pointing to an alternative suspect.

## II. Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty

Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to
> any claim that was adjudicated on the merits in State court proceedings
> unless the adjudication of the claim–
>
> > (1)  resulted in a decision that was contrary to, or involved
> > an unreasonable application of, clearly established Federal
> > law, as determined by the Supreme Court of the United
> > States; or
> > (2)  resulted in a decision that was based on an
> > unreasonable determination of the facts in light of the
> > evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state

court arrives at a conclusion opposite to that reached by the Supreme Court on a question

of law or if the state court decides a case differently than the Supreme Court has on a set

of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  An

"unreasonable application" occurs when "a state court decision unreasonably applies the

law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.  A federal habeas

court may not "issue the writ simply because that court concludes in its independent

judgment that the relevant state-court decision applied clearly established federal law

erroneously or incorrectly." *Id.* at 410-11.  "[A] state court's determination that a claim

lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on

the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101

(2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  To obtain habeas relief

in federal court, a state prisoner is required to show that the state court's rejection of his or her claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.,* at 103. Habeas relief should be denied as long as it is within the "realm of possibility" that fairminded jurists could find the state court decision to be reasonable. *See Woods v. Etherton,* 136 S. Ct. 1149, 1152 (2016).

### III. Discussion

**A. Claim # 1. The sufficiency of evidence claim.**

Petitioner argues that the prosecution presented insufficient evidence to establish his identity as the perpetrator.

It is beyond question that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship,* 397 U.S. 358, 364 (1970). But the crucial question on review of the sufficiency of the evidence to support a criminal conviction is, "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979). A court need not "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.* at 318-19 (internal citation and footnote omitted)(emphasis in the original).

When considering a challenge to the sufficiency of the evidence to convict, the reviewing court must give circumstantial evidence the same weight as direct evidence. *See United States v. Farley*, 2 F.3d 645, 650 (6th Cir. 1993). "Circumstantial evidence alone is sufficient to sustain a conviction and such evidence need not remove every reasonable hypothesis except that of guilt." *United States v. Kelley*, 461 F.3d 817, 825 (6th Cir. 2006)(internal quotation omitted); *See also Saxton v. Sheets*, 547 F.3d 597, 606 (6th Cir. 2008)("A conviction may be sustained based on nothing more than circumstantial evidence."). Moreover, "[c]ircumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence." *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 100 (2003)(quoting *Rogers v. Missouri Pacific R. Co.*, 352 U.S. 500, 508 n.17 (1957)); *See also Holland v. United States*, 348 U.S. 121, 140 (1954)(circumstantial evidence is "intrinsically no different from testimonial evidence," and "[i]f the jury is convinced beyond a reasonable doubt, we can require no more"); *Harrington,* 562 U.S. at 113 ("sufficient conventional circumstantial evidence" supported the verdict).

A federal habeas court cannot overturn a state court decision that rejects a sufficiency of the evidence claim simply because the federal court disagrees with the state court's resolution of that claim. Instead, a federal court may grant habeas relief only if the state court decision was an objectively unreasonable application of the *Jackson* standard. *See Cavazos v. Smith,* 565 U.S. 1, 2 (2011). "Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold." *Id.* Indeed, for a federal habeas court reviewing a state court conviction, "the only

5

question under *Jackson* is whether that finding was so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, 566 U.S. 650, 656 (2012). A state court's determination that the evidence does not fall below that threshold is entitled to "considerable deference under [the] AEDPA." *Id.*

Finally, on habeas review, a federal court does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor was observed at trial. *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983). It is the province of the factfinder to weigh the probative value of the evidence and resolve any conflicts in testimony. *Neal v. Morris*, 972 F. 2d 675, 679 (6th Cir. 1992). A habeas court therefore must defer to the fact finder for its assessment of the credibility of witnesses. *Matthews v. Abramajtys*, 319 F. 3d 780, 788 (6th Cir. 2003).

Under Michigan law, "[T]he identity of a defendant as the perpetrator of the crimes charged is an element of the offense and must be proved beyond a reasonable doubt." *Byrd v. Tessmer*, 82 F. App'x. 147, 150 (6th Cir. 2003)(citing *People v. Turrell*, 25 Mich. App. 646, 181 N.W.2d 655, 656 (1970)). Identity of a defendant can be inferred through circumstantial evidence. *See Dell v. Straub,* 194 F. Supp. 2d 629, 648 (E.D. Mich. 2002). Eyewitness identification is not necessary to sustain a conviction. *See United States v. Brown,* 408 F. 3d 1049, 1051 (8th Cir. 2005); *Dell v. Straub,* 194 F. Supp. 2d at 648.

The Michigan Court of Appeals rejected Petitioner's sufficiency of evidence claim:

Viewed in a light most favorable to the prosecution, the evidence was sufficient to enable the jury to find that the driver of the red Charger that was abandoned at the gas station was the same person who carjacked Foy of that same vehicle at a nearby location a short while earlier. In light of the description of the pushbutton starting mechanism for the Charger, the jury

could find that the person who took the vehicle was able to drive away without the key fob and drove the vehicle to the nearby gas station, but was unable to restart the vehicle without the key fob after stopping to purchase gas. Therefore, the person decided to abandon the vehicle. The driver of the Charger was captured in a still photograph from the gas station's surveillance video, and defendant's former girlfriend identified that person as defendant. In addition, the police later confiscated a black jacket and a gray hooded sweatshirt from defendant, which matched the description of the clothing worn by the person who carjacked Foy. This circumstantial evidence was sufficient to permit a rational trier of fact to reasonably infer beyond a reasonable doubt that defendant was the person who carjacked Foy, stealing the red Charger.

Sufficient evidence also supported defendant's identity as the person who shot and carjacked Brown. Brown's vehicle was approximately 50 feet from where defendant had abandoned the Charger. Given the evidence identifying defendant as the person who abandoned the Charger at the gas station, the jury could find that defendant walked down the street in the direction of Brown, in search of another vehicle. Brown told the police that a man wearing a black jacket approached him as he sat in the driver's seat of his Cadillac, and the man fired a gun through the driver's side window, shooting Brown. Brown was armed with a .38 caliber Derringer and managed to shoot his assailant. Approximately 20 minutes after receiving a dispatch about Brown's shooting, the police encountered defendant, who had a gunshot wound, at a location half a mile from where Brown had been shot. Despite having being shot, defendant did not call 911 for assistance, but instead called his former girlfriend and asked her to call 911. The bullet fragment removed from defendant was consistent with the caliber of bullet that would have been fired from Brown's .38 caliber Derringer. This evidence, viewed in a light most favorable to the prosecution, was sufficient to permit a rational trier of fact to reasonably infer that defendant was the assailant who shot Brown while attempting to steal his Cadillac, and then, after having been shot by Brown during the offense, attempted to distance himself from Brown's location.

Defendant argues that there were discrepancies in the evidence concerning the color of the perpetrator's pants and how many times he was shot, and that there was no eyewitness testimony, or DNA or fingerprint evidence linking him to the crimes. In making these arguments, however, defendant ignores that when evaluating the sufficiency of evidence, this Court is required to resolve all conflicts in the evidence in favor of the prosecution, and that this deferential standard of review is the same whether the evidence is direct or

circumstantial. Defendant's challenges are related to the weight of the evidence rather than its sufficiency. Indeed, these same challenges were presented to the jury during trial. This Court will not interfere with the jury's role of determining issues of weight and credibility.

*People v. Lofland*, 2017 WL 252242, at * 2 (internal footnote and citations omitted).

The Michigan Court of Appeals also rejected Petitioner's argument that the evidence was inconsistent to convict:

Defendant highlights that he was wearing light blue jeans, contrary to Brown's statement that his perpetrator was wearing khaki pants and Foy's statement that his perpetrator was wearing dark pants. Defendant ignores that his former girlfriend identified him as the person at the gas station in possession of the Charger. He also ignores that both Brown and Foy described him as wearing a black jacket, that Foy described him as wearing a gray hoodie under the jacket, and that, when he was found, he was wearing a grey sweatshirt and a black jacket. That defendant was wearing light jeans, and not khaki pants, did not preclude the jury from identifying him as the perpetrator in light of the other circumstantial evidence linking him to the crimes. Foy, unlike Brown, was able to testify at trial, and explained that it was dark, that he really did not see the carjacker's pants because he could only see the carjacker's upper body at the window, and his main focus was on the gun. Defendant also emphasizes that he sustained two gunshot wounds (to his cheek and throat), but Brown fired only one shot. However, the jury could find from the evidence that defendant's wounds were caused by one gunshot. The evidence indicated that Brown was in an SUV that sits higher up off the ground, which explained why the bullet that killed Brown traveled from left to right and slightly upward. When Brown shot back from the driver's seat of his vehicle, his shot would have gone downward, making it possible that the bullet fired by Brown grazed defendant's left cheek before becoming embedded in defendant's throat. Indeed, only one bullet fragment was recovered from defendant's body at the hospital.

*People v. Lofland*, 2017 WL 252242, at * 2, n. 1.

The Michigan Court of Appeals reasonably concluded that there was sufficient circumstantial evidence establishing Petitioner's identity as the person who stole Mr. Foy's

car at gunpoint and who then carjacked and murdered Mr. Brown, so as to sustain his convictions. The police located Petitioner twenty minutes after Mr. Brown was shot; Petitioner was wearing a black jacket and gray hooded sweatshirt, which was later confiscated from Petitioner. Mr. Foy told the police that his assailant wore a gray and black hooded jacket; Mr. Brown told the police that his assailant was wearing a black jacket. The clothing that Petitioner wore shortly after the carjackings matched the description of the clothing of the suspect. The surveillance videotape from the gas station shows the driver of Mr. Foy's red Charger enter the gas station and then leave on foot heading towards the direction some fifty feet away where Mr. Brown was shot. Petitioner was positively identified as this man by Ms. Bracey. Mr. Brown told the police that he shot the suspect. A bullet fragment recovered from Petitioner's neck at the hospital was the same caliber bullet as would have been fired from Mr. Brown's weapon. Instead of calling 911 after being shot, Petitioner called Mr. Bracey, told her he had been shot, but did not say how he had been shot. Petitioner asked Ms. Bracey to call 911 but only gave her a general location as to his whereabouts, on Dexter Avenue. When Ms. Bracey called Petitioner back for a more precise location, Petitioner told her he was at Mack and Dickerson, but when the police responded to the location, they could not find Petitioner. Petitioner was found about a half mile from where Mr. Brown had been shot. Although Petitioner told the police he had been shot at a gas station, he could not give any more information.

A defendant's erratic and suspicious behavior in the aftermath of a crime is sufficient circumstantial evidence to support a jury's finding that the defendant was the perpetrator. *See Johnson v. Coyle,* 200 F. 3d 987, 992 (6th Cir. 2000). The fact that

Petitioner was near the crime scene at the time of the carjackings and murder and the fact that Petitioner told inconsistent or incomplete stories about being shot to Ms. Bracey and to the police supports a finding that he was the perpetrator. *See e.g. Jeffries v. Morgan*, 446 F. App'x. 777, 784 (6th Cir. 2011).

Petitioner argues that there was insufficient evidence to convict him because the police did not recover DNA evidence, fingerprints, or other forensic evidence to convict. The Sixth Circuit notes that the "lack of physical evidence does not render the evidence presented insufficient; instead it goes to weight of the evidence, not its sufficiency." *Gipson v. Sheldon*, 659 F. App'x. 871, 882 (6th Cir. 2016).

Petitioner also points to discrepancies in the description of his pants and the fact that Mr. Brown told the police he shot his assailant two times but Petitioner had only one gunshot wound. A federal court reviewing a state court conviction on habeas review that is "faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Cavazos,* 565 U.S. at 7 (quoting *Jackson v. Virginia,* 443 U.S. at 326). This Court must presume that the trier of fact resolved these conflicts in favor of the prosecution and defer to that resolution.

There were multiple pieces of evidence to establish Petitioner's identity as the perpetrator; the Michigan Court of Appeals did not unreasonably apply *Jackson v. Virginia* in rejecting Petitioner's sufficiency of evidence claim. *See Moreland v. Bradshaw,* 699 F.3d 908, 919-21 (6th Cir. 2012).

**B. Claim # 2. The identification claim.**

Petitioner argues that Ms. Bracey improperly invaded the province of the jury when she was permitted to offer her lay opinion that Petitioner was the person shown in the still photograph from the gas station surveillance video.

Respondent argues that this claim is procedurally defaulted because Petitioner failed to object at trial. The Michigan Court of Appeals ruled that the claim was unpreserved, because Petitioner did not object; the unpreserved claim was reviewed for plain error. *People v. Lofland*, 2017 WL 252242, at * 3. Finding none, the Michigan Court of Appeals rejected the claim. *Id.,* at * 3-4.

When the state courts clearly and expressly rely on a valid state procedural bar, federal habeas review is also barred unless petitioner can demonstrate "cause" for the default and actual prejudice as a result of the alleged constitutional violation, or can demonstrate that failure to consider the claim will result in a "fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991). If a petitioner fails to show cause for his procedural default, it is unnecessary for the court to reach the prejudice issue. *Smith v. Murray*, 477 U.S. 527, 533 (1986). However, in an extraordinary case, where a constitutional error probably resulted in the conviction of one who is actually innocent, a federal court may consider the constitutional claims presented even in the absence of a showing of cause for procedural default. *Murray v. Carrier*, 477 U.S. 478, 479-80 (1986). However, to be credible, such a claim of innocence requires a petitioner to support the allegations of constitutional error with new reliable evidence that was not presented at trial. *Schlup v. Delo*, 513 U.S. 298, 324 (1995). Actual innocence, which would permit collateral

review of a procedurally defaulted claim, means factual innocence, not mere legal insufficiency. *Bousley v. United States*, 523 U.S. 614, 623 (1998).

The Michigan Court of Appeals clearly indicated that by failing to object at trial, Petitioner did not preserve his claim.

Petitioner argues in his reply brief that his claim is not procedurally defaulted because the plain error review conducted by the Michigan Court of Appeals amounts to an adjudication on the merits. (ECF 8, Pg ID 1223).

The fact that the Michigan Court of Appeals engaged in plain error review of Petitioner's claim does not constitute a waiver of the state procedural default. *Seymour v. Walker,* 224 F. 3d 542, 557 (6th Cir. 2000). Instead, this Court must view the Michigan Court of Appeals' review of Petitioner's claim for plain error as enforcement of the procedural default. *Hinkle v. Randle,* 271 F. 3d 239, 244 (6th Cir. 2001). In addition, the mere fact that the Michigan Court of Appeals also discussed the merits of Petitioner's claim in the alternative does not mean that the claim was not procedurally defaulted. A federal court need not reach the merits of a habeas petition where the last state court opinion clearly and expressly rested upon procedural default as an alternative ground, even though it also expressed views on the merits. *McBee v. Abramajtys*, 929 F. 2d 264, 267 (6th Cir. 1991).

The case cited by Petitioner, *Stewart v. Trierweiler*, 867 F.3d 633, 638 (6th Cir. 2017); *cert. den.* 138 S. Ct. 1998 (2018), does not support Petitioner's position. The Sixth Circuit in *Stewart* held that the AEDPA deference applies to any underlying plain-error analysis of a procedurally defaulted claim where the merits of the claim were addressed in

the alternative, but did not suggest that a claim reviewed under the plain error standard is not defaulted.

Petitioner argues that even if the claim is procedurally defaulted, this Court for purposes of judicial economy can choose to ignore it. (ECF 8, Pg ID 1224). Procedural default is not a jurisdictional bar to review of a habeas petition the merits. See *Trest v. Cain*, 522 U.S. 87, 89 (1997). In addition, "[F]ederal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F. 3d 212, 215 (6th Cir. 2003)(citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix*, 520 U.S. at 525. "However, where a straightforward analysis of settled state procedural default law is possible, federal courts cannot justify bypassing the procedural default issue." *Sheffield v. Burt*, 731 F. App'x. 438, 441 (6th Cir. 2018), *cert. denied*, 139 S. Ct. 155 (2018). Petitioner's claim was clearly defaulted. There is no reason to bypass the default.

Petitioner offered no reasons for his failure to preserve this claim. Although ineffective assistance of counsel may constitute cause to excuse a procedural default, that claim itself must be exhausted in the state courts. See *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000). Petitioner raised an ineffective assistance of counsel claim involving his attorney's failure to present evidence of an alternative suspect, but did not raise a claim that trial counsel was ineffective for failing to object to Ms. Bracey's testimony. Petitioner never raised in the Michigan courts a specific claim about trial counsel's failure to object

to Ms. Bracey's lay opinion testimony; any alleged ineffectiveness of counsel cannot constitute cause to excuse Petitioner's default. See *Wolfe v. Bock,* 412 F. Supp. 2d 657, 684 (E.D. Mich. 2006).

Petitioner failed to allege any reasons to excuse his procedural default; it is unnecessary to reach the prejudice issue regarding this claim. *Smith*, 477 U.S. at 533.

Petitioner did not present any new reliable evidence to support a claim of innocence to allow this Court to consider his second claim in spite of the procedural default. Petitioner's sufficiency of evidence claim is insufficient to invoke the actual innocence doctrine to the procedural default rule. See *Malcum v. Burt,* 276 F. Supp. 2d 664, 677 (E.D. Mich. 2003).

Petitioner points to evidence that Mr. Brown's daughter, Shakitta Callaway, overheard her stepfather, Carlton Shivers, threaten to kill Mr. Brown during a telephone conversation with Mr. Brown's ex-wife. Petitioner suggests that Mr. Shivers was the person who killed Mr. Brown. The same police report that Petitioner uses to support his claim indicates that a police sergeant directly asked Mr. Brown if Mr. Shivers shot him and Brown replied no. (ECF 7-11, Pg ID 888-91, 902, 905-08).

Ms. Callaway's statement to the police is hearsay and is thus presumptively unreliable for supporting an actual innocence claim. *Bell v. Howes*, 701 F. App'x, 408, 412 (6th Cir. 2017), *cert. denied sub nom. Bell v. Hoffner*, 138 S. Ct. 519 (2017), *reh'g denied*, 138 S. Ct. 2617 (2018)(citing *Herrera v. Collins*, 506 U.S. 390, 417 (1993)). Ms. Callaway's statement to the police is also "entitled to little weight because [it is] unsworn." *Id.* Finally, Mr. Brown knew Mr. Shivers and told the police that he was not his assailant;

14

any evidence suggesting that Mr. Shivers was the actual shooter is only minimally persuasive evidence of Petitioner's innocence; Petitioner is unable to demonstrate that failure to consider this claim will result in a fundamental miscarriage of justice. *Id.* at 413-14.

Petitioner did not present any new reliable evidence that he is innocent of these crimes; a miscarriage of justice will not occur if the Court declined to review Petitioner's second claim on the merits. *See Campbell v. Grayson,* 207 F. Supp. 2d 589, 597-98 (E.D. Mich. 2002).

**C. Claim # 3.  The ineffective assistance of counsel claim.**

Petitioner alleges he was denied the effective assistance of counsel for failing to present evidence that Mr. Carlton Shivers threatened to kill Mr. Brown.  Petitioner argues that this prior threat proves that Mr. Shivers was the actual killer.

A defendant must  satisfy a two prong test to show that he or she was denied the effective assistance of counsel.  First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id*. In other words, petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689.  Second, the defendant must show that such performance prejudiced his defense. *Id*. To demonstrate prejudice, the defendant must show that "there is a reasonable probability

that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. "*Strickland*'s test for prejudice is a demanding one. 'The likelihood of a different result must be substantial, not just conceivable.'" *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011)(quoting *Harrington*, 562 U.S. at 112). The Supreme Court's holding in *Strickland* places the burden on the defendant who raises a claim of ineffective assistance of counsel, and not the state, to show a reasonable probability that the result of the proceeding would have been different, but for counsel's allegedly deficient performance. *See Wong v. Belmontes*, 558 U.S. 15, 27 (2009).

More importantly, on habeas review, "the question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable-a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)(quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). "The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard." *Harrington v. Richter*, 562 U.S. at 101. Indeed, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles,* 556 U.S. at 123 (citing *Yarborough v. Alvarado*, 541 U.S. at 664). Pursuant to the § 2254(d)(1) standard, a "doubly deferential judicial review" applies to a *Strickland* claim brought by a habeas petitioner. *Id.* This means that on habeas review of a state court conviction, "[A] state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Harrington*,

562 U.S. at 101. "Surmounting *Strickland's* high bar is never an easy task." *Id.* at 105

(quoting *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)).

Because of this doubly deferential standard, the Supreme Court indicated that:

> Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Harrington v. Richter*, 562 U.S. at 105.

In addition, a reviewing court must not merely give defense counsel the benefit of

the doubt, but must also affirmatively entertain the range of possible reasons that counsel

may have had for proceeding as he or she did. *Cullen v. Pinholster,* 563 U.S. 170, 196

(2011).

The Michigan Court of Appeals rejected Petitioner's claim:

> Defendant relies on a police report in which Brown's daughter reported overhearing Shivers state his intention to kill Brown to establish the factual predicate for his claim that there was valuable evidence that Shivers shot Brown. The same police report, however, also discloses that a police sergeant directly asked Brown if Shivers shot him and "*he stated no*" (Emphasis added.) Moreover, Brown's daughter overheard Shivers's threatening statement while she was listening in on a conversation between Shivers and her mother. Because information in the record indicates that Brown knew Shivers and expressly stated that Shivers did not shoot Brown, that the testimony would have been hearsay because it involved Shivers's out-of-court statement, offered to prove the truth of the matter asserted, MRE 801, and defendant has not offered any other evidence to support a theory that Shivers was the shooter, defense counsel's decision to forego presenting this evidence was not objectively unreasonable. Accordingly, defendant has not overcome the strong presumption that defense counsel provided constitutionally effective assistance in this regard.

*People v. Lofland*, 2017 WL 252242, at * 5 (internal citations omitted).

Petitioner argues that this Court should not employ the AEDPA's deferential standard with respect to the prejudice prong of his ineffective assistance of counsel claim because the Michigan Court of Appeals did not reach the prejudice prong of the *Strickland* standard in rejecting the claim.

This Court cannot accept Petitioner's argument. This Court recognizes that the Sixth Circuit several times ruled that when a state court only addresses one prong of the *Strickland* test in rejecting a habeas petitioner's ineffective assistance of counsel claim, the federal habeas court should review that prong under the AEDPA's deferential standard of review, but apply *de novo* review to the other prong. *See e.g. Rayner v. Mills,* 685 F. 3d 631, 636-39 (6th Cir. 2012). The Sixth Circuit, however, in a subsequent case, while continuing to follow this holding, noted that this is a "peculiar rule" that is contrary to both the letter and the spirit of § 2254(d). *See Hodges v. Colson,* 727 F. 3d 517, 537, n. 5 (6th Cir. 2013). The Sixth Circuit in *Hodges* believed that the panel in *Rayner* had ignored the Supreme Court's language in *Harrington* which indicated:

> Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief. This is so whether or not the state court reveals which of the elements in a multipart claim it found insufficient, for § 2254(d) *applies when a "claim," not a component of one, has been adjudicated.*

*Id.* (quoting *Harrington,* 562 at 98)(emphasis original).

The Sixth Circuit also noted in *Hodges* that their prior holding in *Rayner* created:

> [t]he following peculiar rule: if the state court fails to given an explanation as to either prong, then full AEDPA deference is due to both prongs; but if the state court gives an explanation of one prong, then we do not give deference to the other. In other words, the more information the state court

provides, the less deference we grant it.  This is contrary not only to the language of the statute, which speaks of "claims" not components of claims, but also contrary to the spirit of § 2254(d), which is designed to give more deference to a state court judgment on the merits.

Moreover, as a matter of logic, a finding that counsel's performance was not deficient implicitly, but unequivocally, encompasses a finding that the performance did not prejudice the defendant.  Indeed, it would be nonsensical to argue that a performance deemed to be constitutionally sufficient nevertheless prejudiced the defendant.  It must be assumed that a state court's decision that performance was not deficient includes a decision that the performance was not prejudicial.

*Id.*

In light of the clear language in *Harrington,* the AEDPA's deferential standard of review applies to the prejudice prong of the *Strickland* ineffective assistance of counsel standard, even if the Michigan Court of Appeals did not explicitly address the prejudice prong of the ineffective assistance of counsel claim.  Moreover, the Michigan Court of Appeals clearly found that trial counsel was not deficient.  Such a finding "implicitly, but unequivocally, encompasses a finding that the performance did not prejudice the defendant." *Hodges,* 727 F. 3d at 537, n. 5. [1]

To prevail on his claim, Petitioner must show that trial counsel's alleged failure to investigate other suspects for the murder constituted deficient performance that resulted in prejudice. *Zagorski v. Mays*, 907 F.3d 901, 907 (6th Cir. 2018), *cert. denied*, 139 S. Ct.

---

[1]  Absent a clear directive from the Supreme Court or a decision of the Court of Appeals sitting en banc, a panel of the Court of Appeals, or for that matter, a district court, is not at liberty to reverse the circuit's precedent. *See Brown v. Cassens Transport Co.*, 492 F.3d 640, 646 (6th Cir. 2007). In the absence of Supreme Court precedent directly on point, a district court should decline to "underrule" established circuit court precedent. *See Johnson v. City of Detroit*, 319 F. Supp. 2d 756, 771, n. 8 (E.D. Mich. 2004).  It appears, however, that the clear language of the Supreme Court's decision in *Harrington* indicates that the AEDPA's deferential standard of review applies to both parts of a multipart claim, even if the state court only addresses one component of that claim. This Court's conclusion is supported by the logic behind the Sixth Circuit's criticism of *Rayner* in the *Hodges* decision.

450  (2018).  This Court notes that "a defense counsel's decision not to introduce evidence of the commission of a crime by third parties does not constitute ineffective assistance of counsel, where the evidence does not 'point unerringly' to the guilt of the third party and the innocence of the accused." *Calicut v. Quigley*, No. 05-CV-72334, 2007 WL 37751, at * 8 (E.D. Mich. Jan. 3, 2007)(Roberts, J.)(quoting *Hoots v. Allsbrook*, 785 F.2d 1214, 1222 (4th Cir. 1986)).  Mr. Brown knew Mr. Shivers and told the police he was not his assailant. Other than the threat, there is no other evidence linking Mr. Shivers to the murder.  Since there was little or no evidence linking Mr. Shivers to the murder, trial counsel was not ineffective in failing to pursue a third party culpability defense. *See e.g. Robins v. Fortner,* 698 F. 3d 317, 331 (6th Cir. 2012).

## IV.  Conclusion

The Court denies the petition for writ of habeas corpus.  The Court also denies a certificate of appealability to Petitioner.  To obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2).  To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000).  When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484.  Likewise, when a district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying

constitutional claims, a certificate of appealability should issue, and an appeal of the district court's order may be taken, if the petitioner shows that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id.* at 484. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254; *See also Strayhorn v. Booker,* 718 F. Supp. 2d 846, 875 (E.D. Mich. 2010).

For the reasons stated in this opinion, the Court denies Petitioner a certificate of appealability; he failed to make a substantial showing of the denial of a federal constitutional right. *See Siebert v. Jackson,* 205 F. Supp. 2d 727, 735 (E.D. Mich. 2002).

Although this Court denies a certificate of appealability, the standard for granting an application for leave to proceed *in forma pauperis* (IFP) is lower than the standard for certificates of appealability. *See Foster v. Ludwick,* 208 F. Supp. 2d 750, 764 (E.D. Mich. 2002). While a certificate of appealability may only be granted if petitioner makes a substantial showing of the denial of a constitutional right, a court may grant IFP status if it finds that an appeal is being taken in good faith. *Id.* at 764-65; 28 U.S.C. § 1915(a)(3); Fed. R.App.24 (a). "Good faith" requires a showing that the issues raised are not frivolous; it does not require a showing of probable success on the merits. *Foster,* 208 F. Supp. 2d at 765. Although jurists of reason would not debate this Court's resolution of Petitioner's claims, the issues are not frivolous; therefore, an appeal could be taken in good faith and Petitioner may proceed *in forma pauperis* on appeal. *Id.*

## V.  ORDER

**The Court DENIES** the Petition for Writ of Habeas Corpus and a Certificate of

Appealability.

Petitioner is **GRANTED** leave to appeal *in forma pauperis.*

s/ Victoria A. Roberts
**HON. VICTORIA A. ROBERTS**
Dated:  **5/24/19**                              **UNITED STATES DISTRICT JUDGE**